UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:17-cv-00308-FDW

| | |
|---|---|
| **MARQUIS DECHANE HARRISON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| **BRANDON NICHOLSON,**[1] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court upon Defendant Brandon Nicholson's Motion to Dismiss or alternatively for Summary Judgment (Doc. No. 12) and Motion to Strike Plaintiff's Surreplies (Doc. No. 20).

**I.    BACKGROUND**

Pro se Plaintiff Marquis Dechane Harrison is a North Carolina inmate currently incarcerated at Craggy Correctional Center in Asheville, North Carolina.[2] He filed this 42 U.S.C. § 1983 action on November 8, 2017, alleging Defendant Brandon Nicholson used excessive force against him while Plaintiff was a pre-trial detainee at the Henderson County Detention Center ("HCDC"). Specifically, Plaintiff alleges that on October 28, 2017, Nicholson choked, punched, and knocked Plaintiff to the ground, pulled Plaintiff's hair, and attempted to shove Plaintiff's face into a shower floor. According to the Complaint, Plaintiff suffered abrasions and swelling on the left side of his face and a black eye. Plaintiff asserts that he was

---

[1] Defendant was identified in the Complaint simply as "Brandon." Defendant has identified himself as Brandon Nicholson in his Motion to Dismiss. (Mot. to Dismiss 1, Doc. No. 12.)

[2] The North Carolina Department of Public Safety Offender Public Information website indicates Plaintiff was transferred to Craggy Correctional Center on December 7, 2018. See https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (search for "Marquis D. Harrison" last conducted on Dec. 17, 2018).

1

not disciplined in relation to the incident. He seeks monetary damages. (Compl. 3-4, Doc. No. 1.)

On December 12, 2017, the Court entered an Order requiring Plaintiff to demonstrate that he had exhausted his administrative remedies as required by 42 U.S. C. § 1997e(a). (Doc. No. 4.). In response to the Order, Plaintiff submitted a Verified Statement that he had "not exhausted [his] administrative remedies. (Pl.'s Verified Stmt. 1, Doc. No. 5.)

On September 4, 2018, Nicholson filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim and failure to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (a), or alternatively for summary judgment, pursuant to Federal Rules of Civil Procedure 12(d) and 56, based upon Plaintiff's failure to exhaust administrative remedies. (Doc. No. 12.) On September 5, 2018, the Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant's Motion to Dismiss. (Doc. No. 13.) Plaintiff has filed his Response (Doc. No. 16), and Defendant Nicholson has filed a Reply (Doc. No. 17).

Thereafter, Plaintiff refiled his Response to Defendant's Motion to Dismiss (Doc. No. 18), which Defendant characterizes as a surreply, and a document titled "Response in Opposition to Defendants' [sic] Second Motion to Dismiss" (Doc. No. 19), which appears to be a surreply to Nicholson's Reply. Nicholson has moved to strike Docket Numbers 18 and 19 as unauthorized under the local rules of the United States District Court for the Western District of North Carolina. (Doc. No. 20.)

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for

failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion "invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2).

### III. DISCUSSION

Defendant's Motion seeks dismissal of Plaintiff's Complaint on the ground that he has not exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a). (Mot. to Dismiss 3, Doc. No. 12.) The PLRA requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted).

The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524). Finally, a prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action; rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. See e.g., Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the statute [§ 1997e(a) ] makes exhaustion a precondition to filing an action in federal court . . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.") (citations omitted).

The sole exception to the PLRA's exhaustion requirement provides that an inmate "must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). There are only three circumstances in which an administrative remedy may be considered "unavailable": (1) when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when "prison officials thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60.

Plaintiff does not allege the HCDC has no inmate grievance or administrative remedy process or that he was prevented by something or someone from taking advantage of those procedures. (Pl.'s Verified Stmt.; Pl.'s Resp. 1-2, Doc. No. 16.) Instead, according to his filings, Plaintiff believed his "best option" was "going [directly] to the highest chain of command," rather than following the normal administrative remedy procedure, because "[Nicholson] has been known to get carried away with the physical abuse to inmates an[d] nothing has been done about it." (Pl.'s Verified Stmt. 2.) Immediately after the incident, Plaintiff spoke to Sergeant Todd McCrain, who "scolded" Nicholson within earshot of Plaintiff. Nicholson was then allowed to continue work. Plaintiff was not reprimanded or found to be at fault in the incident. (Pl.'s Resp. 1.) Based upon McCrain's handling of the incident, Plaintiff believed he would receive no relief for the assault, and that his only recourse was to file the instant § 1983 action. (Pl.'s Verified Stmt. 2; Pl.'s Resp. 1.)

Plaintiff does not allege that the HCDC's grievance procedure was so opaque as to be incapable of use or that HCDC officials thwart inmates from taking advantage of the grievance process. For example, Plaintiff does not allege McCrain discouraged, threatened, or intimidated him in any way.

Nor does Plaintiff sufficiently allege that the HCDC administrative remedy procedure operates as a simple dead end. It is clear from Plaintiff's filings that complaining directly to a prison employee's superior is not part of the established grievance process. Furthermore, Plaintiff does not allege McCrain was the highest official in Nicholson's chain of command, or that any complaint he made against Nicholson using the established grievance process would have gone to McCrain for a final decision.

Next, Plaintiff does not allege that he filed one or more grievances prior to the October

28, 2017 incident, only to have prison officials unable or consistently unwilling to provide any relief. He also does not allege other inmates using the established grievance procedure found prison officials unable or consistently unwilling to provide any relief.

Finally, although elsewhere he alleges Nicholson "has been known to get carried away with the physical abuse to inmates" and that "nothing has been done about it," in his Complaint, Plaintiff states Nicholson "has been known [to use excessive force], and gotten in trouble . . . by administration, an[d] it's obvious he did not learn his lesson," because he used "extreme excessive force" in the October 28, 2017 incident. (Compl. 2.) In other words, according to Plaintiff's Complaint, HCDC officials had not consistently ignored allegations of excessive use of force by Nicholson.

In sum, Plaintiff has not sufficiently alleged that HCDC's administrative remedy process was "unavailable." By his own admission, nothing prevented Plaintiff from taking advantage of the HCDC administrative remedy procedures before filing the instant Complaint. Accordingly, Defendant's Motion to Dismiss for failure to exhaust remedies as required under the PLRA shall be granted and the Complaint dismissed without prejudice to Plaintiff's ability to file a § 1983 action after he has exhausted his administrative remedies.[3]

As for Defendant's Motion to Strike Plaintiff's Surreplies (Doc. No. 20), Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Rules of Practice and Procedure of the United States District Court for the Western District of North Carolina neither anticipate

---

[3] In his November 16, 2018 Surreply, Plaintiff states that he completed a grievance related to the October 28, 2017 incident and mailed it to the HCDC the week of October 15, 2018. (Nov. 16, 2018 Surreply, Doc. No. 19.) He then alleges the HCDC did not respond within the three days required under the North Carolina Department of Public Safety ("NCDPS") Administrative Remedy Procedure guidelines. The HCDC is not part of the NCDPS, however, and therefore is not governed by that Department's policies and procedures. Plaintiff must follow the HCDC's administrative remedy procedures to exhaust his remedies under the PLRA. See generally, Ngo, 548 U.S. 81.

nor allow parties to file surreplies without leave of the Court. See LCvR 7.1(e). As noted, documents numbered 18 and 19 on the docket were filed by Plaintiff after Nicholson's Reply.

Document number 18 is identical to Plaintiff's Response (Doc. No. 16) to Nicholson's Motion to Dismiss (Doc. No. 12). To the extent document number 18 can be considered a surreply, Plaintiff did not seek leave of the Court to file it. To the extent it is not a surreply, Document number 18 is redundant of document number 16.

The title of document number 19 indicates it was filed as a response to Nicholson's Reply, which Plaintiff characterizes as Defendant's "Second Motion to Dismiss." Therefore, it is a surreply to Nicholson's Reply, and Plaintiff did not seek leave of the Court to file it. Accordingly, Defendant's Motion to Strike documents numbered 18 and 19 shall be granted.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. 12) for failure to exhaust administrative remedies is **GRANTED**;

2. The Complaint pursuant to 42 U.S.C. § 1983 (Doc. No. 1) is **DISMISSED without prejudice** to Plaintiff's ability to file a civil rights complaint in the future after exhausting his administrative remedies;

3. Defendant's Motion to Strike Plaintiff's Surreplies (Doc. No. 20) is **GRANTED**; and

4. The Clerk of Court is directed to mail a copy of this Order to Plaintiff at Craggy Correctional Center, in Asheville, North Carolina.

Signed: December 18,

Frank D. Whitney
Chief United States District Judge